**SOUTHERN SURETY CO. v. GUARANTY STATE BANK OF DE LEON et al. ***
(No. 1726.)

(Court of Civil Apeals of Texas. El Paso. May 14, 1925. Rehearing Denied June 11, 1925.)

**1. Highways ⊙⟶113(5)—Action against surety on contractors' bond, more than year after abandonment by contractors, barred.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 6394h, action for materials furnished road contractors, brought against surety on contractors' bond, more than year after abandonment of contract, held barred, notwithstanding surety company took over abandoned contract and continued with work, and irrespective of other provisions of chapter 3, tit. 113 (articles 6394f-6394j).

**2. Highways ⊙⟶113(5)—Pleading held to sufficiently show liability of road contractors' surety for groceries furnished contractors to board men.**

Cross-bill against road contractors' surety for groceries furnished contractors for laborers, alleging that it was necessary to furnish board on account of remoteness of work from boarding places, to expedite work and that it was furnished at moderate cost and deducted from wages paid, and that groceries were furnished laborers while engaged on work, held to sufficiently state facts essential to liability on bond, under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f.

**3. Highways ⊙⟶113(5)—Evidence sufficient to sustain claim against surety on road contractors' bond, for groceries furnished contractors to board laborers.**

Evidence held sufficient to sustain claim, against surety on road contractors' bond, required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, for groceries to board laborers, as showing boarding camps were necessary to facilitate work, this being a matter largely within discretion of contractor.

**4. Highways ⊙⟶113(5) — Evidence insufficient to charge surety of road contractors' bond with claim for feed furnished to subcontractors.**

On claim by materialmen against surety on road contractors' bond, required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, for feed furnished animals of subcontractors while on the work, failure of evidence to show that deductions for feed were made from sums paid to subcontractors by principal contractors in settling with them, held fatal.

**5. Highways ⊙⟶113(5)—Evidence sufficient to sustain claim of materialmen against surety on road contractors' bond, for clothing furnished laborers.**

On claim by materialmen against surety on road contractors' bond, required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, for clothing furnished laborers, evidence that latter accepted clothing in discharge of wages, under agreement, that wages were discharged to such extent, and that materialmen had not been paid therefor held sufficient to show ownership of clothing item.

**6. Highways ⊙⟶113(5)—Claim for lumber by materialmen, against surety on road contractors' bond, sustained.**

Where road contractors abandoned work and surety completed it, surety held liable for lumber furnished contractors, though evidence failed to show exactly how much of lumber was used to destruction, where surety was shown to have taken over all the lumber left, and used it in completion of work.

**7. Principal and surety ⊙⟶107—Surety, on road contractors' bond, not released by agreement between materialmen and contractors, extending time for payment by latter.**

Agreement of creditors, furnishing material and money to road contractors, to extend time for payment of items for which surety was liable under bond, required by Vernon's Sayles'

---

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 25, 1925.

Ann. Civ. St. 1914, art. 6394f, extension being within term for performance of original contract, *held* not to discharge surety, notwithstanding latter may have remained ignorant as to comtractors' financial condition thereby, and made other surety contracts, to its injury.

8. **Principal and surety** ⬅⇒99—**Ordinarily, valid agreement of creditor with principal debtor, materially varying terms of contract, discharges surety.**

Ordinarily, valid agreement of creditor with principal debtor without assent of surety, materially varying terms of contract or extending time for performance, will discharge surety.

9. **Assignments** ⬅⇒85—**Prior assignee of retainage by county on estimates of road contractors' work entitled.**

Where road contractors assigned retainage by county on estimates to surety on bond, and later authorized bank to collect estimates, which bank applied on past-due and unpaid notes of contractor, surety, being prior assignee, *held* entitled as against bank.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Suit by the Southern Surety Company against the Guaranty State Bank of De Leon, Higginbotham Bros. & Co., and another. From a judgment for defendants, and for defendant last named on counterclaims, plaintiff appeals. Reformed and affirmed.

John T. Suggs, of Denison, and Y. W. Holmes, of Comanche, for appellant.

Hampton & Hampton, of De Leon, G. E. Smith and Jerome P. Kearby, both of Comanche, and Oxford & Johnson, of Stephenville, for appellees.

WALTHALL, J.   Southern Surety Company, a corporation, brought this suit against the Guaranty State Bank of De Leon, Texas, hereinafter called 'the bank, Higginbotham Bros. & Co., a corporation, hereinafter called Higginbotham, and W. O. Allen, and sought judgment against each under the following circumstances:

On the 23d day of August, 1921, Comanche county, acting by and through its commissioners' court, entered into a written contract with Harris & Powell, a partnership, in which contract Harris & Powell obligated themselves to furnish all labor, material and equipment and ·build and construct for the county certain roads, bridges, and similar structures in consideration of the moneys therein agreed to be paid. Harris & Powell were to be paid on certain stated periodical estimates, 10 per cent. to be retained by the county on the estimates until the completion of the job. Harris & Powell executed the penal bond required by law and conditioned as the law requires (article 6394f, Vernon's Sayles' Civil Stat. 1914) with the Southern Surety Company, appellant here, as surety.

To secure appellant against loss by reason of its being surety on their bond, Harris & Powell, on executing the bond, assigned to appellant their estimates and retainage on their contract with the county. Harris & Powell shortly thereafter entered upon the performance of their contract and so continued until about the 25th day of August, 1922. Harris & Powell were adjudged bankrupt on August 28, 1922, but they and their subcontractors continued the work under the contract until September 8, 1922, when the contractors and subcontractors and all employees under both, abandoned the contract, and at the request of the county the surety company took up the work under its contract as surety, and carried it forward to completion in May, 1923. During the progress of the work under the contract, Harris & Powell became indebted to Higginbotham for supplies and materials used in the furtherance of the work under their contract, and also became indebted to the bank for borrowed money. About June 1, 1922, Harris & Powell were unable financially to proceed further with their work under their contract, and neither Higginbotham nor the bank was willing to extend further credit. While extending credit to Harris & Powell during the progress of the work as above, the bank and Higginbotham, by their contract, with Harris & Powell of June 1, 1922, had first and second liens, respectively, on the estimates and retainage under the contract with the county.

In order that the work under the contract with the county might proceed, on the 1st day of June, 1922, Harris & Powell, Higginbotham, and the bank entered into a written agreement, its terms to be more fully stated where necessary, by which Higginbotham would furnish additional supplies in specified amounts, and the bank would collect the estimates and pay out the money collected, first for labor and for such materials and supplies furnished, a part of the remainder to be applied on the bank's claim, and any balance remaining to be applied to the claim of each Higginbotham and the bank. From and after the 1st day of June, 1922, Harris & Powell proceeded with the work under said agreement of June 1, 1922, until their abandonment of the contract with the county on September 8, 1922. Under the above agreement, the bank collected the estimates for the month of June and deposited same to the credit of Harris & Powell, and made payment on checks of Harris & Powell to Higginbotham for all goods sold Harris & Powell from June 1st, to the date of the June payment, and the bank collected the July estimate and deposited same to the credit of Harris & Powell, and on checks of Harris & Powell made payment to Higginbotham for all goods sold after June 1st and not paid for to said date. On August 25th, the bank col-

lected $13,300, the estimate for August, and placed same to the credit of Harris & Powell on its books, and failed and refused to pay Higginbotham for goods sold to Harris & Powell to the amount of $3,088.29.

The Southern Surety Company, after the abandonment of the work by Harris & Powell, acting under its obligation, paid labor claims which arose during the period the parties were acting under the triangular agreement of June 1, 1922, and to recover which sums so paid it sued the bank for moneys collected on the estimates and made Higginbotham a party to the suit as claiming an interest in the money.

The claim of the surety company as to the bank seems to be that in collecting the estimates from the county under the agreement of June 1st, the bank was a trustee as to the amounts collected, alleged to be the sum of $14,000 for such persons as might labor and furnish material to the contractors of said work during the times referred to, but that notwithstanding the conditions and provisions of said agreement of June 1st under which such collections were made, and its trusteeship of said funds collected, the bank failed and refused to disburse any of the funds so collected, but has appropriated the entire amount to its own use and benefit. That by reason of its suretyship on the contractor's bond it became liable as surety for the payment to persons furnishing labor, in the performance of the contract with the county, not paid for by the contractors. The surety company shows a large number of persons to whom it was so liable, and to whom it made payment, and alleges that by reason of its liability and such payment it is subrogated to all of the rights previously vested in such laborers.

The surety company shows that W. O. Allen was one of the subcontractors of Harris & Powell to whom they owed a large sum of money and which it was compelled to pay and did pay, and that at the time of payment and in consideration of such payment, Allen assigned and transferred said claim to it, and that it is now the owner and holder of said claim, and now seeks recovery from the bank of the amount paid.

Higginbotham filed its second amended original and cross bill on October 22, 1923, and answered by general denial, except such matters as are admitted. It pleaded that during the progress of the work it furnished to Harris & Powell, personally, material and supplies used in and about the construction of the work to June 1, 1922, to the value of $18,579.87, for which Harris & Powell failed to pay, but approved its account for said amount and executed their note for said sum, which note is past due and unpaid. It alleges that on June 1, 1922, it declined to further furnish supplies to Harris & Powell, and that to induce it to furnish supplies to Harris

& Powell, the agreement of June 1, 1922, as above, was entered into that the work might go forward. Higginbotham pleads its several provisions that in an effort to carry out said agreement, at the instance of Harris & Powell, it advanced to them and their subcontractors supplies and material from June 1 to September 8, 1922.

Higginbotham sued Comanche county, pleaded over against the bank, and filed a cross-action against the surety company, the issues and the several amounts stated, and without stating the pleading as to the several items, are substantially as follows:

It sues the county for the funds and retainage and that it be decreed title to same, and the county be directed to pay to it to the extent of its indebtedness against Harris & Powell, the sum of $23,159.49; that its claim of $3,385.33 of the $13,500 collected from the county by the bank be held superior to the claim of the surety; that its claim to the sum of $3,579.87 of said fund of $14,500, be adjudged superior to any claim of the surety, except labor claims originating after June 1st; that its claim to one-half of the excess of said funds, if any, after providing for said two above claims, and after the bank's $2,500, be held superior to the surety's claim on said excess; that it have judgment against the bank for $3,385.33, for unpaid account for supplies and material furnished Harris & Powell after June 1st; that it have judgment against the bank for the further sum of $3,579.87, to be applied as a credit on its debt against Harris & Powell in the sum of $18,579.83; that it have judgment against the bank for one-half of any excess of the $13,500 after allowing its two claims above, and the bank the $2,500, as a credit on the indebtedness of Harris & Powell in the sum of $18,579.87; that it have judgment against the surety for $3,300 being one-half of the sum the surety collected from the county for accrued earning of Harris & Powell for labor and material from June 25 to September 8, 1922, and that same be applied as a credit on the same $18,579.87, indebtedness of Harris & Powell; that it have judgment against the surety for $7,279.32, the amount due Rainey & Humphrey by Harris & Powell for labor, said account now owned by it, said amount to be applied as a credit on said $18,579.87; that it have judgment against the surety for $5,818.60, the amount due R. J. Brule by Harris & Powell for labor, said claim now owned by it, and to be applied as a credit on the debt of $10,000 owing by Brule and Harris & Powell to it; that it have judgment against the surety for $1,269.29, the amount due O. W. Barton by Harris & Powell, said amount now owned by it; that it have judgment against the surety for the sum of $18,579.87 upon its itemized account for material furnished Harris & Powell used in the construction of the work prior to June 1, 1922, less

the value of such items as may be discharged by the credits above sought to be applied on the said indebtedness of Harris & Powell; that it have judgment against the surety for $3,384.48 upon its itemized account for material Harris & Powell used in the construction of the road after June 1st, and up to September 8th less such credits as are referred to.

The bank filed answer to the suit of the surety, and the suit of Higginbotham. After pleading the undertaking of Harris & Powell in the matter of the contract with the county to do the work in the building of the roads, etc., and the making of the bond with the surety company, as above, and stating certain loans the bank made to Harris & Powell, to enable them to perform their contract with the county, the bank answered the suit of the surety, in substance, that the laborers on the work, nor the surety, not being parties to the agreement of June 1st, cannot rely upon it; that the agreement was without authority on the part of the bank, not having been authorized by its board of directors, nor ratified by them; the agreement was without consideration; that it was procured by fraud on the part of Harris & Powell; the agreement of June 1st was abandoned, and pleaded matters of estoppel and waiver; it pleaded certain indebtedness of Harris & Powell to the bank growing out of the advancement of money the bank made to Harris & Powell in the matter of the work on the contract with the county; it pleaded the statute of limitation of one year in bar of the surety's suit.

Its answer to the suit of Higginbotham was substantially the same; it denied that it was trustee in the collection of the money from the county on the monthly estimates. The bank pleaded other matters which we will discuss under propositions, when necessary. All parties filed lengthy original, amended, and supplemental pleadings and trial amendments too extensive to state in detail in this outline of the issues.

The case was tried without a jury. The suit was dismissed as to Allen. It was also agreed in open court by all parties that the county be dismissed from the suit without prejudice to the right of any of the parties to prosecute a suit thereafter against the county in connection with the matters here in controversy. The court adjudged that the claim of Higginbotham is superior to that of the surety to the $3,088.29 of the $13,300 turned over to the bank on the order of Harris & Powell on August 25, 1922. The trial court denied a recovery of the surety against the bank. The court gave judgment in favor of Higginbotham against the bank for the $3,088.29 of the $13,300, and interest from August 25, 1922. Judgment was entered in favor of Higginbotham and against the surety on the C. W. Bartin labor claim in the further sum of $1,194.29, and interest. The court gave judgment in favor of Higginbotham against the surety in the further sum of $9,464.89 for the value of material it furnished Harris & Powell from January 9 to June 1, 1922, and about all of which items there seems to be no question of limitation.

Judgment was also given in favor of Higginbotham against the surety for $3,262.87 for feed furnished Harris & Powell, and for $2,500.13 for groceries, and for $315.47 for clothing furnished the laborers from January 9 to June 1, 1922, and $297 for groceries, feed for teams, gas and oil for trucks hauling gravel, material and supplies, clothing furnished laborers from August 25 to September 8, all furnished to Harris & Powell the claim for the several items assigned to Higginbotham, and as to such last-stated items plea of limitation was filed.

The court filed extensive findings of fact and conclusions of law, covering some 87 pages of the record. The surety company filed assignments of error, and prosecutes this appeal. It presents 28 propositions.

## Opinion.

The trial court found that, while Harris & Powell became bankrupts and were so adjudged to be on August 28, 1922, through their own personal efforts and that of their subcontractors, they continued in the prosecution of the work under the contract with the county until the 8th day of September, 1922, and on that day they and their subcontractors and employees abandoned the contract, leaving the work uncompleted. On the 8th day of September, 1922, at the request of the county, the surety company took up the unfinished work on the roads and proceeded with same to completion on May 5, 1923. Higginbotham, for the first time in its pleading, in its cross-action against the surety company, on October 22 and on November 28, 1923, sued for feed, $3,262.87 and $182.25; for groceries, $2,500.10 and $46.40; for clothing $315.47 and $27.75, all items of indebtedness accruing under the contractors, Harris & Powell, and before their abandonment of the contract.

[1] To the above items the surety company specially excepted, and interposed a special plea of the one-year statute of limitations to such claims. The trial court held the items were not barred, and gave judgment for Higginbotham against the surety company for said items. The surety company, under several propositions, complains of the court's holding.

The latter portion of article 6394h, R. S. (Vernon's Sayles' Ann. Civ. St. 1914) applicable to the point presented, provides:

"Provided that if the contractor quits or abandons the contract before its consummation, suit may be instituted by any of such creditors on the bond of the contractor, and shall be commenced within one year after abandonment of said contract, and not later."

Here the contractors abandoned the contract before its consummation; Higginbotham was a creditor of the contractors; its suit on the items as against the surety company was on the bond, and the suit was not commenced within one year after the abandonment of the contract by the contractors. We are of the opinion that the statute above quoted was not tolled by reason of the surety company taking over the abandoned contract and going forward with the work. The cause of action on the items of indebtedness arose, if at all, on the 8th day of September, 1922, and were barred one year next thereafter. The above quoted portion of the article of the statute, in our opinion, is not affected by the previous provision of the same article, or by any other article of the statute, as insisted by appellee, Higginbotham. We have carefully considered, in this connection, the whole chapter 3, tit. 113, Vernon's Sayles' Texas Civil Statutes 1914, same being chapter 99, 33d Leg. (1913) p. 185.

[2] The surety company makes the further contention, which we think it well to consider, that if the item for groceries is not barred by limitation, in order for Higginbotham to recover for groceries for boarding the men it was necessary for it to allege and prove that the boarding of the men was necessary, the arrangement under which they were boarded, and that the amount of their board was deducted from their wages; and that where the board was furnished to the men by subcontractors, in settling with subcontractors the amount of such board was deducted. The answer alleged:

"The major portion of said road, which was being constructed, was located in the county remotely from any city, town, or village, and that there were no hotels nor boarding houses accessible to the laborers who were performing the work of constructing said road. And, in order to keep laborers at work on said road, and to expedite the work, it was necessary for the contractors and subcontractors to provide board for said men, which they did at a moderate cost, and deducted the value of their said board from the wages which said contractors paid said laborers. And that the groceries specified in the respective itemized accounts of the respective contractors and subcontractors, which account is hereto attached, this defendant furnished said contractors and subcontractors for the purpose of boarding said men, to the end that they might be enabled to perform the labor necessary in the construction of said road; that said groceries were used by said laborers while engaged in the construction of said road, and were necessary in the building of said road and constitute material furnished in and about the construction of said road within the meaning of that term as used in the penal bond executed by plaintiff and referred to in this answer and cross-bill."

Was it necessary for the cross-bill to more specifically plead the facts which make the furnishing of the groceries necessary? That the furnishing of board for the men was not a side line carried on for profit? Certainly it would not be necessary to negative facts which would tend to show that the furnishing of board for the men was necessary. We think the pleading sufficiently states the facts essential to liability on the bond. It states that it was necessary to furnish the board, and the reason for it, that is, its remoteness from boarding places; the purpose of it is shown to expedite the work; it was furnished at a moderate cost, and deducted from the wages paid; the groceries were used by the laborers while engaged on the work.

[3] We do not understand the surety company's contention to be that the furnishing of groceries to men while laboring on the work would not come within the terms of the bond providing that the contractor or contractors shall make payment to all persons supplying him or them with labor or material in the prosecution of the work provided for in the contract, as required by article 6394f of the statute, but does make the contention that the pleading of appellee does not sufficiently allege the facts, and the evidence offered on the facts alleged does not support the finding of the trial court that the groceries furnished by Higginbotham to the contractors from January 9 to June 1, 1922, were necessary to enable the contractors to board the men who were performing the labor on the work, in order to facilitate the work, and to the amount found and that the price of the boarding was deducted by the contractors from the wages. The evidence is too voluminous to quote it here. We have carefully reviewed it. It possibly should have been more specific on some of the facts pleaded, but we think it shows that the boarding camps maintained by the contractors and subcontractors were necessary to facilitate the work; that to do so it was necessary to furnish the camps with supplies, and that the price of the board was deducted from the wages of the men. There is nothing in the evidence to suggest that the boarding camps were not maintained strictly for the men working on the job. H. E. Whittle, a witness for appellee, testified: Worked for Harris & Powell more than 18 months. Hauled groceries to one camp, said:

"No one ate there except Harris & Powell employees, and I don't remember that any one else ever had a meal there."

To us it seems that the relation of the groceries furnished to the work then being done on the job was proximate, material, and decisive, and established the conditions essential to liability on the bond. As said by Mr. Justice Brandeis in Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, United States Supreme Court Report, 62 L. Ed. 703, L. R. A. 1918D, 776:

"The furnishing of board by the contractor was an integral part of the work and necessari-

ly involved in it; * * * was indispensable to the prosecution of the work, and * * * used exclusively in the performance of the work."

[4] We can appreciate the suggestion made by the appellant, surety company, that where the work was disrupted by the abandonment of the work by the contractors, the sources of evidence as to what boarding arrangements were had would be difficult to obtain. But the same difficulty of obtaining the evidence to trace the use made of the supplies would, no doubt, be met by the appellee furnishing the supplies as with the appellant. We think the question of the necessity for the establishment of the boarding camps for the men at work, whether the work was near or remote from the town of De Leon, or other towns, would necessarily be largely, if not entirely, within the discretion of the contractors themselves, considering the best service of the men. It would hardly be the duty of the one furnishing supplies to a contractor on the work to determine the advisability as to when and where a supply camp was to be established. The same reasoning applied to the furnishing of groceries to the boarding camps applies to the furnishing of feed for animals on the work, they are materials supplied and used in the prosecution of the work. This appellant concedes, but challenges the sufficiency of the evidence to show that the feed item of $182.25 furnished by appellee Higginbotham, to the subcontractors, Rainey & Humphreys, was held out by Harris & Powell, from the sums paid the said subcontractors in settling with them. It is insisted that the evidence fails to show that such deductions were made. Under mutual arrangements, Higginbotham furnished the feed and charged same to Harris & Powell and looked to them for payment. The trial court found that between August 25 and September 8, 1922, the feed for the teams working on the roads was furnished as above, and to the value stated, and that same was necessary, and that same had not been paid, but as far as the record discloses, made no finding that the amount of the feed bill had not been deducted in the settlement of Harris & Powell with the said subcontractors. The court, however, rendered judgment for the amount of the feed bill. On the item of the feed bill, Powell, of Harris & Powell, testified that it was necessary to furnish the feed, and that it was agreed between him and the subcontractors, on the one hand, and the men to whom the feed was furnished on the other, that it should be deducted from the labor and wages paid. The question seems not to have been asked any witness, and none testified that the deduction for feed was made by Harris & Powell in the settlement with the subcontractor. To hold that the feed item was deducted in the settlement would be a bare presumption, and, while we think it barred by limitation as stated, we think also the evidence is not sufficient to establish it as a claim against the surety company.

[5] In its trial amendment filed on the 28th day of November, 1923, Higginbotham alleged that an agreement was entered into between it and Harris & Powell and the laborers working on the road, by which it was to furnish the laborers articles of clothing upon the order of Harris & Powell upon request of the laborers, Harris & Powell to deduct the amount from the wages of the laborers, and make the payment to Higginbotham, and that pursuant to the agreement it sold the laborers, clothing to the amount of $315.47, on orders from Harris & Powell, as in its itemized account; by reason of which it asserts an equitable assignment to the extent of the purchases. It alleged the performance of the labor on the road to the value of the purchases; the deduction of the amount of the purchases from the wages; the failure of Harris & Powell to make the payment. The trial court found the making of the agreement as above: That Harris & Powell deducted the wages to pay the clothes purchases, and the failure of Harris & Powell to make the payment, and held that the agreement constituted an equitable assignment of the claims to the extent of the clothes purchases, and gave judgment therefor.

Primarily, the item for clothing, we think, was barred by limitation. The evidence fails to show that the amount for clothing furnished the laborers was deducted from their wages as urged by the surety company; nor does the evidence show an assignment of the clothing item by Harris & Powell to Higginbotham, other than the agreement itself. The evidence shows that the clothing was furnished the laborers, and that they accepted them in discharge of wages. We think the agreement to furnish the clothing in discharge of the wages to the extent of the value of the clothing, that the clothing had been furnished and accepted, and that Higginbotham had not been paid for the clothing would be sufficient to show the ownership or interest in the clothing item in Higginbotham. By furnishing the clothing to the laborers under the agreement and their acceptance of it for their wages, the wages were thereby discharged to the extent of the value of the clothing furnished and accepted. McIlheney, Adm'r, and U. T. Co. v. Binz, 80 Tex. 1, 20, 13 S. W. 655, 26 Am. St. Rep. 705.

The judgment against the surety company and in favor of Higginbotham on its cross-action, in the sum of $9,464.89, is made up of a number of items classed as material within the meaning of appellant's bond, furnished Harris & Powell by Higginbotham, and among the items is "lumber used to destruction, $1,359.92."

[6] The trial court found that all the lumber was used to destruction and so gave judgment for the item, the total amount of the lumber furnished. Appellant insists that there was no sufficient evidence on which to base the finding that all the lumber was used to destruction; that while much of the lumber was used to destruction the evidence shows that some of it was not and that in the condition of the evidence, it being impossible to determine the amount used to destruction, it was error to give judgment for any amount. We do not concur in the contention made ·by appellant as to the condition of the evidence. It is true, as insisted upon, that all of the lumber was not used to destruction. One witness testified that from 95 to 99 per cent. of it was "absolutely rendered worthless, practically worn out on the road." J. C. Field testified:

"I was engaged by the Southern Surety Company to complete the work on highway No. 18 and 22 at De Leon and did complete it. * * * We spoiled a good deal of lumber in completing the road. It wore out lots of lumber. I think we had a very small salvage at the end of the job. The lumber was not much account that we took charge of. The salvage was turned over to the Southern Surety Company; in the end it got all the lumber left that had not been put in the road, or we had not worn out, by appropriation of the salvage after winding up the job."

The same witness further testified:

"Of the pilings in round numbers we drove a total of approximately 4,200 lineal feet, and we used to the extent of right at 2,000 feet that we found on the ground."

As we construe the evidence all material, including lumber left by Harris & Powell, whether much or little, was taken over as salvage and used by appellant in the completion of the job. Such being the condition of the evidence the rule invoked by appellant would not apply.

[7] On June 1, 1922, Harris & Powell, the contractors with the county on the work to build the roads, were indebted to Higginbotham in the sum of $18,579.87, for material and supplies furnished said contractors in the performance of said road work previous to that date. The said contractors at said time were also indebted to the bank for money advanced to pay labor on said road work. On said 1st day of June, 1922, Harris & Powell were unable, for lack of money and material, to go forward with the road work under their contract with the county, and to enable them to do so, Harris & Powell, the bank, and Higginbotham entered into the contract of that date, heretofore referred to, one of the provisions of which being that Higginbotham agreed to furnish further supplies and material to Harris & Powell from that date upon the condition therein stated. Harris & Powell and others executed to Higginbotham a note of date May 4, 1922, for $10,000, and due on or before July 1, 1922. On June 1, 1922, for the indebtedness of the contractors then owing Higginbotham in said sum of $18,579.87, which included the $10,000 above, and past due and unpaid, Higginbotham accepted a note executed by Harris & Powell payable to Higginbotham in said sum and due and payable 90 days after date. The trial court found that the surety company did not consent to the making of said contract of June 1, 1922, or the making of said notes, or the extension of said indebtedness by the execution of said notes, and did not have actual notice thereof, but did have constructive notice. The trial court concluded as a matter of law that appellant, surety company, was not released from liability to Higginbotham on its bond by reason of its accepting, without the surety company's actual knowledge or consent, said notes; nor by reason of Higginbotham's entering into said contract of June 1, 1922, for the reason, as stated in the court's conclusion, that none of said agreements altered or changed in any manner the original contract between the county and Harris & Powell, and for the reason that the said original contract was silent as to the terms on which Harris & Powell should purchase material or labor, and left the contractors to make their own terms for material and labor without restriction or limitation.

The surety company, by proper assignment and propositions, complains of the above conclusion of the trial court, and insists that it was released therefrom for the reason that the undisputed evidence and the findings of the court disclose that, subsequent to the making of said notes and the extension of the time of payment of the indebtedness of Harris & Powell for which the notes were given, the surety company assumed additional obligations of Harris & Powell and as their surety, on which it sustained loss, and that had it had notice of said extension it would not, as surety, have executed any of said undertakings; that had said extension not been granted, appellant would have been called on to perform the contract with the county and would have done so and would have earned a profit to offset the losses previously incurred; that Harris & Powell were in default on June 1, 1922, as to the payment for said material and labor, whereby the assignment to appellant of all funds accruing or to accrue under said contract with the county became effective and in force, and appellant would have been entitled to and it could have collected all funds in the hands of the county, about $50,000 which had accrued on account of work done by Harris & Powell, and which under the contract of June 1st, was collected by the bank, and of which sum, more than $10,000 was diverted from the payment of labor and material and applied to liabilities for which appellant was not re-

sponsible; that by reason of said extension appellant was further damaged for the reason that within the extended term Harris & Powell were adjudged bankrupts, thus depriving appellant of the right of action against its principals for loss sustained on account of their default, within one year from such adjudication and discharge.

Appellant has not in its brief pointed out in the record the item or items constituting the amount, or any amount stated, to have been diverted from the payment of labor or material, and we have not found such from the record or from any finding of the court.

[8] We concur in the contention made by appellant, surety company, in its statement of the elementary rule that where a creditor of a principal debtor by valid agreement with the principal debtor, without assent of the surety, materially varies the terms of the contract on which it is surety, or extends the time for its performance, the surety is thereby discharged. Such was held to be the law in Burke v. Cruger, 8 Tex. 67, 58 Am. Dec. 102, and, on motion for rehearing in Yeary v. Smith, 45 Tex. 56, page 71, and followed since in many cases, as the settled law in this state. The reason of the principle seems to be that the contract between the parties is varied and the risks of the surety increased. The surety is bound by the terms of his contract, and if the creditor, by agreement with the principal debtor, without the concurrence of the surety, varies these terms by enlarging the time of performance, the surety is discharged, for the reason that he is injured and his risk is increased. So much for the rule invoked. Does the rule find application in the facts of the case? We have concluded that it does not. Several reasons might be assigned.

It was the original contract between Harris & Powell and the county that fixed the liability as surety of the appellant, surety company, and not the extension of payment of the first note, and the agreement of June 1, 1922, which was in no way related to the orginal contract with the county. The time for the performance of the contract with the county was never changed or extended by the agreement of June 1st or by the taking of the notes. As said by the trial court in the paragraph of the conclusions complained of, the original contracts between the county and Harris & Powell were silent as to the terms on which Harris & Powell should purchase material and labor, and left its contractors on the road work to make and alter their own terms with materialmen and laborers without restriction or limitation. Here there was no change in the contract guaranteed by the surety company. It would seem to be a harsh and improper construction of the rule to hold that where payment for material and labor had matured as between the materialman and the contractor, and by mutual agreement between them, the time for payment was extended 30, 60, or 90 days, without the concurrence of the surety, but within the term for performance of the original contract with the county, the surety would be relieved. Such is not our construction of the rule as to the effect of a change in the terms of performance of a contract on which one is secondarily liable.

Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621. In that case, Mr. Justice Greenwood quotes with approval from the opinion of the Supreme Court of the United States in United States F. & G. Co. v. Golden Pressed & Fire Brick Co., 191 U. S. 425, 24 S. Ct. 144 (48 L. Ed. 242), from which we quote in part:

"Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days, or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time."

As said by Mr. Justice Greenwood in the Hess & Skinner Engineering Company Case, the surety company was liable on the bond for the payment of the debts to the local merchants and laborers, being essentially claims for material and labor in the prosecution of the work of performing the contract with the county. Such was its undertaking. The fact that the surety company sustained injury by having made bond for Harris & Powell on other works and would not have made such bonds had it known of the financial condition of Harris & Powell is too remote, we think, to form a basis for a release of the surety from its obligation on its bond. In fact we know of no duty of a creditor furnishing material to the contractor to keep the surety advised as to the financial condition of its principal.

[9] The surety company alleged that it was compelled to pay, and did pay, labor bills which arose after June 1st, and during the time the bank, Higginbotham, and Harris & Powell were acting under the contract of June 1, 1922, and asked judgment against the bank for the amount of the payments so made, and in the alternative that the money collected by the bank from the county under the agreement of June 1st, be prorated, etc. The trial court found that after June 1, 1922, Harris & Powell became indebted to laborers who performed labor on the road prior to August 25, 1922, in excess of $10,500, and that after September 8, 1922 (the date of the abandonment of the work by the contractors), the surety company paid the laborers said indebtedness as required by their bond.

The court further found that at the time Harris & Powell abandoned their contract they were then owing the bank some $17,300, besides interest; that after certain payments of amounts stated were made by the county to Harris & Powell, from estimates and re-

tainage on the work, and received by the bank under the contract of June 1, 1922, and deposited to the general deposit account of Harris & Powell, Harris & Powell drew checks thereon prior to their abandonment of the work thereby reducing the balance of their account with the bank at the time of the abandonment to $10,500, which amount the bank, after the abandonment of the work, charged to Harris & Powell's general deposit account and credited same on their past-due notes held by the bank.

The trial court concluded that the laborers, whose claims the surety company had paid, not being parties to the contract of June 1st, the surety company had no right to any part of said funds in the hands of the bank, and that Harris & Powell, by reason of their course of dealing with the bank waived their right to have the bank make payment to the laborers as provided in the agreement of June 1st and so holding the trial court denied the surety company recovery against the bank. To the above conclusions of the trial court, the surety company assigned error.

The record discloses that Harris & Powell, long prior to June 1, 1922, had assigned to the surety company the retainage by the county on the estimates of the work. These estimates, Harris & Powell, under the contract of June 1st, authorized the bank to collect for the county. The bank made collections of the estimates and placed them to the account of Harris & Powell. The $10,500 involved in this part of the controversy is the unused balance of the estimates in the hands of the bank at and after the abandonment of the work. The bank applied the amount on the past-due and unpaid note of Harris & Powell then held by the bank. The trial court gave judgment in favor of Higginbotham and against the bank for $3,088.28, of said amount, by reason of the contract of June 1st, and from which judgment the bank has not appealed.

We think the question presented is ruled by the Supreme Court in the case of Hess & Skinner Eng. Co. v. Turney, 110 Tex. 148, 216 S. W. 621, and referred to above on another proposition. In that case, without stating the facts calling for the ruling, but sufficiently similar, we think, to make the holding applicable here, Judge Greenwood said:

"In our opinion the rule is sound, which gives priority in rank to equitable assignments in the order of their dates, without regard to notice to the debtor. Brander v. Young, 12 Tex. 335; Harris Co. v. Campbell, 68 Tex. 27, 3 S. W. 243, 2 Am. St. Rep. 467; Milmo Natl. Bank v. Convery, 8 Tex. Civ. App. 181, 27 S. W. 829; Harris Co. v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; Henke v. Keller, 50 Tex. Civ. App. 533, 110 S. W. 784.

"The debtor is fully protected because he is not affected by the assignment until notified, and the subsequent assignee, in dealing with a chose in action, is chargeable with knowledge that he can get no better right than that of his assignor. It increases uncertainty in the law's administration to substitute the date of notice to the debtor as the test of priority for the date of assignment; and we can see how grave harm would follow for us to now depart from our thoroughly established simple test of priority in right from priority in time of the assignment."

We think, and so hold, the surety company should recover from the bank the balance of the $10,500 after deducting the $3,088.29, of said amount allowed Higginbotham.

For reasons stated, the judgment is reformed as indicated in passing upon the several issues, and judgment is here rendered as indicated, and as reformed the case is affirmed.

Reformed, and, as reformed, affirmed.