Argued April 9, reversed April 22, 1919.

## MULTNOMAH COUNTY *v.* UNITED STATES FIDELITY & GUARANTY CO.

(180 Pac. 104.)

**Highways—Improvement—Contractor's Bond—Construction.**

1. Where highway contractor's bond is executed under Section 6266, L. O. L., as to public contractor's bond, the statute should be read in and become a part of the bond.

**Courts—Rules of Decision—Stare Decisis.**

2. Where law laid down by decision of the Supreme Court construing public contractor's bond executed under Section 6266, L. O. L., has been in force and effect for more than a year, during which time many similar bonds have been written, the case has become *stare decisis.*

**Highways—Improvement—Construction of Bond—"Labor."**

3. Highway contractor's bond executed under Section 6266, L. O. L., and conditioned upon his making prompt payment to all "persons supplying him * * labor * * for any prosecution of the work," *held* to include payment to owner of horses for services of horses in prosecution of the work; such services constituting "labor."

[As to who is within the meaning of statutes relating to laborer, workman or servant, see note to 32 Am. Rep. 264.]

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.

On January 27, 1916, plaintiff filed its complaint against the defendants in the Circuit Court of Multnomah County, and after the necessary corporate allegations avers that about January 21, 1915, the defendant, Pacific Bridge Company, entered into a written contract with the plaintiff, Multnomah County, for the improvement of that portion of the Columbia River Highway known as Section D, in accord with the plans and specifications therefor, in and by which the contractor agreed "to furnish all materials, tools and equipment and all labor necessary to complete the work."

The complaint alleges that pursuant to said contract "and in accordance with the laws of the State of Oregon" the defendant Pacific Bridge Company, as principal, and United States Fidelity & Guaranty Company, as surety, executed to Multnomah County its certain penal bond, conditioned "that Pacific Bridge Company should promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who should supply such laborers, mechanics, subcontractors or materialmen with supplies or provisions for carrying on such work"; that the Pacific Bridge Company "entered upon the work of carrying out said contract and making said improvement in accordance therewith"; that it sublet a portion of said work to Thomas A. Sweeney or contracted with him to furnish teams and equipment to haul materials to be used and which were used in the work of carrying out said contract; and that during the months of August, September, October and November of 1915, R. J. O'Neil, for whose use and benefit this action was brought, furnished and supplied Sweeney with certain horses, pursuant to an agreement with him that he should keep the horses "in a camp established by him on said improvement work, assume the cost of feed and hire drivers for the same, and pay in addition to the said R. J. O'Neil the reasonable value of the labor performed by said horses in the work of teaming or hauling said materiads for use in said improvement." It is further alleged that "the reasonable value of the labor so furnished and supplied by said R. J. O'Neil by said horses was the sum of $315," no part of which has been paid; that the full amount thereof is due and owing to the said O'Neil, and that prior to the commencement of the action he made the necessary proofs and furnished the required affidavits

which gave him the right of action. A copy of the bond and a copy of the contract between the Bridge Company and Multnomah County are attached to the complaint as exhibits and made a part thereof.

The defendant filed a demurrer upon the ground:

"That said complaint does not state facts sufficient to constitute a cause of suit or action against the defendants herein or either thereof."

On February 21, 1916, the trial court sustained the demurrer and dismissed the action and rendered judgment against the plaintiff for costs, from which ruling the plaintiff appealed, claiming that the court erred in sustaining the demurrer to the complaint, and that is the only question presented on the appeal.

REVERSED.

For appellant there was a brief over the names of *Mr. R. J. O'Neil* and *Mr. W. B. Gleason,* with an oral argument by *Mr. O'Neil.*

For respondents there was a brief over the names of *Mr. David E. Johnson Wilson* and *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. Wilson.*

JOHNS, J.—The action is founded upon Section 6266, Lord's Oregon Laws, which provides as follows:

"Hereafter any person or persons, firm or corporation, entering into a formal contract with the State of Oregon, or any municipality, county, or school district within said state, for the construction of any buildings, or the prosecution and completion of any work, or for repairs upon any building or work, shall be required before commencing such work, to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor

or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts''; etc.

The statute was enacted in 1903 and is entitled:

"An act to protect subcontractors, materialmen and laborers furnishing material for doing work upon public buildings, structures, superstructures or other public works'': Laws 1903, p. 256.

1. Under the rule of construction, this statute should be read into and become a part of the bond.

In the case of *Multnomah County* v. *United States Fidelity & Guaranty Co.,* 87 Or. 198 (170 Pac. 525, L. R. A. 1918C, 685), an action was brought by the county against the defendant, for and on behalf of L. H, McMahan, against the same defendants here for the use of a caterpillar engine which it is alleged that McMahan hired to Sweeney and for the use of which he agreed to pay $10 per day. There, as here, a general demurrer was filed to the complaint and sustained by the trial court upon the theory that the use of the caterpillar engine did not come within the terms of the bond. That ruling was reversed by a decision of this court, written on January 22, 1918, by Mr. Justice BEAN.

2. The law of that case is vigorously attacked by respondent, but it has been in force and effect for more than one year, and it is a matter of common knowledge that in the ordinary course of business many such bonds have been written in that time and the decision must have been known and acted upon at the time of their execution, and that case should now be *stare decisis.*

The purpose of the act was to protect all persons supplying "labor or materials for any prosecution of

the work provided for in such contract" and there is much stronger reason for holding that the use of horses comes within the meaning of the word "labor" as used in the act than the rental of a caterpillar engine employed on the work. A caterpillar engine is a machine; a horse is a domestic animal with some degree of intelligence.

The respondents have cited definitions from Words & Phrases and the New Standard Dictionary as to the meaning of the words "labor and material" and of the word "labor," but Century Dictionary defines the word "labor" as "work done by a human being or an animal," and Words & Phrases, Volume 5, page 3951, says:

"Within the meaning of a statute giving a lien to 'laborers and for persons furnishing materials to contractors or subcontractors' labor done by a man's team may be fairly regarded as labor done by him, no right arising to anyone out of its services except to him," citing *Chicago N. E. R. Co.* v. *Sturgis,* 44 Mich. 538, 541 (7 N. W. 213, 214).

The opinion in that case says:

"But the labor done by a man's team may be fairly regarded as labor done by him within the meaning of this statute."

The same authority also cites the case of *Hogan* v. *Cushing,* 49 Wis. 169 (5 N. W. 490, 491), in which the syllabus says:

"The 'labor and services' for which Chapter 95 of 1877 gives a lien upon logs, are not merely the personal manual labor and services of the claimant, but include those performed by his teams and servants."

3. If O'Neil in person or through his own employees had used his horses in the "prosecution of the work" there would be no question about his right to recover

for the joint services of both horses and men. On legal principle, the same rule should apply where he hired out his horses to another to be used and they were so used. We hold that the word "labor" within the meaning of the act should be construed to include the services which the horses performed in the "prosecution of the work."

Judgment is reversed.                    REVERSED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.

--------

Motion to dismiss submitted April 18, appeal dismissed April 22, 1919.