## FRANZEN v. SOUTHERN SURETY CO.*
### (No. 1269; May 18, 1926; 246 Pac. 30.)

HIGHWAYS—STATUTES—CONTRACTOR'S BOND—LABOR AND MATERIALS
FURNISHED "IN EXECUTION OF CONTRACT"—WORDS AND PHRASES
—FEED FURNISHED FOR ANIMALS USED IN CONSTRUCTION, AND COAL
AND OIL FURNISHED FOR POWER AND LIGHT, SECURED BY CONTRAC-
TOR'S BOND.

1. Highway contractor's bond, given pursuant to Comp. St. 1920, § 329, must be construed in connection with the statute.

2. Comp. St. 1920, § 329, requiring bonds of contractors engaged in public work, is not unconstitutional because making surety liable for materials furnished but which do not bodily enter into permanent structure and become component part thereof.

3. Comp. St. 1920, § 329, requiring contractors engaged in public work to execute bond for benefit of person performing labor or furnishing material in execution of contract, does not limit labor and material furnished to such as would be lienable under the mechanic's lien statutes.

4. Labor and material furnished "in execution of contract" for which contractor engaged in public work must execute bond, under Comp. St. 1920, § 329, includes all labor and material which contributes directly or indirectly to completion of work.

5. Feed furnished to horses used by highway contractor in performance of a contract *held* material furnished in execution of contract within Comp. St. 1920, § 329, for which surety under highway contractor's bond, given pursuant thereto, is liable, in view of section 332.

6. Where labor or material furnished to contractor engaged in public work is necessary or even proper for execution of any particular work, and furnishing of such labor and material may be fairly held to have been in contemplation of parties when executing contract and bond therefor, such labor and material is protected under a contract and bond rendering surety liable for labor and material furnished in execution of contract.

7.  Cost of overshoes furnished to highway contractors and their men *held* not recoverable of surety under contractor's bond executed pursuant to Comp. St. 1920, § 329, guaranteeing payments for labor and material furnished in execution of contract.

8.  Cost of coal used for generation of power of machine used by highway contractors in construction of road, coal oil used in contractors' camp for purpose of supplying light, and haulage of such items, *held* recoverable of surety under contractor's bond executed pursuant to Comp. St. 1920, § 329, guaranteeing payment of labor and material furnished in execution of contract.

*See Headnotes (1) 9 C J p. 35 n. 77.    (2) 29 C J p. 611 n. 37. (3) 29 C J p. 611 n. 40; p. 612 n. 57, 64 New; p. 613 n. 74:  40 C J p. 85 n. 64.    (4) 29 C J p. 612 n. 65.    (5) 29 C J p. 612 n. 65.    (6) 29 C J p. 613 n. 69 New.    (7, 8) 29 C J p. 612 n. 65.

ERROR to District Court, Albany County; VOLNEY J. TID-BALL, Judge.

Action by Asmus Franzen against the Southern Surety Company upon a highway contractor's bond. There was a judgment for defendant, and plaintiff brings error.

*G. R. McConnell,* and *Ray E. Lee,* for plaintiff in error.

The contractor's bond was furnished under the requirements of the laws of the state to assure the performance of and is governed by the same laws as other contracts; Cleveland R. R. Co. v. Ellis, 85 O. S. 251; 97 N. E. 967; 39 L. R. A. N. S. 1219; State v. Mortensen, 69 Nebr. 376; 5 Ann. Cas. 291; Chapter 151, laws 1921, requires ninety days public notice to be given before final estimates are paid on public contracts; Chapter 31 C. S. prescribes conditions for the protection of persons performing labor or furnishing materials in the execution of such contracts; provisions and supplies come within the terms of materials furnished; Brogan v. Surety Co., 246 U. S. 257; 62 L. ed. 703; hay and grain for animals used on the contract, come within the rule; National Co. v. Lumber Co., (Wash.) 122 Pac. 337; Freight and drayage in delivering materials are

included; American Co. v. Cement Co., 110 Fed. 717; U. S. v. Morgan, 111 Fed. 474; U. S. v. Hagenman, 204 Pac. 438; Trust Co. v. Crane Co., 219 U. S. 24; Nye Co. v. Bridges, 151 N. W. 942; Trust Co. v. Engine Works, 163 Fed. 168; Surety Co. v. John Davis Co., 244, U. S. 376; bond is valid even though broader than contract; Clatsop County v. Feldschau, 199 Pac. 953; 18 A. L. R. 1221; U. S. F. & G. Co. v. Parker, 20 Wyo. 29.   The contract and bond constitute the obligation of the surety.

*Lee Cotton,* for defendant in error.

Bonds filed under these statutes are a substitute for laborers' and materialmen's liens, and since laborers and materialmen cannot file liens upon public property, bonds of this class are made to furnish a remedy; Smith v. Bowman (Utah) 88 Pac. 687; U. S. v. Burgdorf, 13 Ap. D. C. 506; Press Co. v. Surety Co., 149 Fed. 507; Young v. Young, 52 N. E. 776; Surety Co. v. Lauber, 55 N. E. 793; King v. Downey, 56 N. E. 680; U. S. v. Surety Co., 200 U. S. 197; the bond should cover only lienable items; Beals v. Fidelity Co., 76 N. Y. App. Div. 256; 178 N. Y. 581; 70 N. E. 1095; Surety Co. v. Excavator Co. 160 Pac. 716; U. S. v. Ins. Co., 198 Fed. 923; Jones v. Hotel Co., 30 C. C. A. 108; 193 U. S. 532.   There is no valid claim on the bond for contractors' equipment; Beals v. Co., 178 N Y. 681; 70 N. E. 1095; Co. v. Yowmans, 112 S. W. 225; U. S. v. Morgan, 111 Fed. 474; or for repairs; Public Works v. Yonkers, 124 N. Y. Sup. 307; Boiler Works v. Surety Co., 127 Pac. 573; or for fuel, lubricants or explosives; Zipp v. Fidelity Co., 76 N. Y. Sup. 386; City Trust v. U. S., 147 Fed. 155; Philadelphia v. Malone, 63 Atl. 539; food and supplies for men are excluded; Cadenasso v. Antonelle, 127 Cal. 382, 59 Pac. 765; Parkinson v. Alexander, 14 Pac. 466; St. Louis v. Ritz, 1 Pac. 27; U. S. v. Kinepland, 93 Fed. 403; U. S. v. Fidelity Co. 169 Ill. App. 1; Van Havns Co. v. Day, 148 S. W. 1129; Armour & Co. v. Western Co. 78 Pac. 1106; Perrault v. Shaw, 38 Atl. 724; Electric Co.

v. Springfield Co., 86 N. E. 248. Money loaned is not a claim; Cadenasso v. Antonelle, supra; Hardaway v. Surety Co. 150 Fed. 465; drayage expense is not included; Alpena v. Murray Co., 159 Mich. 336; 123 N. W. 1128. In Gibbs v. Tally, 65 Pac. 970, a similar statute in California was held unconstitutional. In Bolln Co. v. Irrigation Co., 19 Wyo. 542, this court held this statute unconstitutional except as to material which actually entered into and formed a part of the permanent structure; the word "material" is used in the statute instead of the word "supplies". The finding of the lower court seems to be in harmony with this decision.

BLUME, Justice.

This action was brought in Albany county by Asmus Franzen, plaintiff, hereinafter designated in the same manner, against the Southern Surety Company and others, for certain material furnished by plaintiff to Fitzgerald Brothers, a partnership. It appears that on the 1st day of June, 1922, the said partnership entered into a contract with the Highway Commission of the state for the purpose of building a portion of the Lincoln Highway in the county of Albany, for the consideration mentioned in said contract. Said contractor furnished a bond to the state of Wyoming in the principal amount of $4700, with the Southern Surety Company as surety. The bond, after reciting the foregoing contract and the proposal and specifications attached thereto, and making the same a portion of the bond, concludes:

"Now therefore, if the said principal shall well and truly perform said work in accordance with the terms of said contract, advertisement, proposal, plans and specifications, and pay for all labor and material in connection with said work, then this obligation shall be void; otherwise it shall remain in full force and effect."

The plaintiff herein furnished to said partnership supplies or materials of the value of $405.67, the following items of which are in dispute: First, feed, consisting of hay and grain, fed to, and consumed by, the horses that were used by said partnership in doing said work. Second, overshoes, furnished to said contractors or to some of the men on said work. Third, coal, used for the generation of power of a machine used in the construction of said road. Fourth, coal oil, evidently used for the purpose of furnishing light in the camp maintained by said partnership in connection with the construction of said road. Fifth, haulage of the foregoing items. The court disallowed all of these items and entered judgment accordingly, from which plaintiff has appealed. It appears that said partnership failed to fully perform its contract, and said surety company completed it and paid out the sum of $1428.61 in excess of the amount which it received under said contract from the state. This fact, however, seems to have no bearing on the case, inasmuch as the excess payment, together with the amount herein asked by the plaintiff, does not equal the amount of the bond, and hence we shall not give this matter any further consideration.

1. The bond herein was evidently executed pursuant to the provision of section 329, W. C. S. 1920, first passed as chapter 137 of the Session Laws of 1919. That section provides, among other things, that whenever a contract is entered into with the state, county, city, town, school district or other public corporation for the construction of any public work or improvement exceeding the contract price of $500, the contractors shall be required to execute a bond to the state or other public subdivision thereof "for the use of the same, and also for the use and benefit of all persons who may perform any work or labor or furnish any material *in the execution of such contract,* conditioned for the performance and completion of such

contract according to the terms thereof and to comply with all the requirements of law; and to pay, as they become due, all just claims for all work or labor performed and material furnished *in the execution of such contract.*" (Italics are ours.) The condition of the bond executed in the case at bar is not strictly in accordance with the provisions of the statute. The meaning of the language employed in the bond, however, is probably as broad as, if not broader than, the meaning of the language employed in the statute. In any event, the bond appears to have been given pursuant to the requirement of the statute. It must, accordingly, be construed in connection therewith. Fay v. Bankers Surety Co., 125 Minn. 211, 146 N. W. 688, Ann. Cas. 1915C 688; Aetna Casualty & Surety Co. v. Henslee, (Ark.) 260 S. W. 414, 416; Multnomah County v. U. S. Fid. & G. Co., 92 Ore. 146, 180 Pac. 104. And with that construction in mind, we think we may assume that the contractor and the surety company herein are liable to the extent that they are made so under and by virtue of the provisions of section 329 aforesaid.

2. Counsel for the surety company, however, argue that the statute aforesaid could not make the bonding company liable for any material except such as actually, and bodily, entered into the permanent structure and became a component part thereof, and that if it attempts to do so, it is to that extent void and unconstitutional. In support of that contention, we are only cited to the case of George Bolln Co. v. Irrigation Co., 19 Wyo. 542, 121 Pac. 22. In that case this court construed chapter 78 of the laws of 1909, requiring a ditch owner to take from the person, with whom he makes a contract for the construction of a ditch, a good and sufficient bond in some surety company, conditioned that such contractor should pay all laborers, mechanics, ranchmen, farmers, material men and other persons who supply him or any of his subcontractors with labor or material of any kind; and providing,

further, that if the owner fails to take such bond, he is liable to the full extent of all debts contracted by such contractor or a subcontractor in the construction of the ditch. We held that in so far as the statute requires a surety company bond and creates a personal liability for other things than labor and materials which actually go into the work and thereby enhance the value of the property, it is unconstitutional and void and interferes with the liberty to contract, is a taking of property without due process and a denial of the equal protection of the laws. We fail to see the application of that case. The statute referred to therein deals with contracts between private individuals. Section 329, supra, deals with bonds in connection with contracts made by public officials under the control of the state. The contract in this case was let by one of the departments of the state itself. We are unable to see why the state may not let its own contracts upon any conditions, of benefit to the public, which it deems fit to impose, or why the legislature should not have the power to require the agents of the state to let such contracts only upon such conditions. No authority to the contrary has been called to our attention. It has frequently been held that municipalities or other public bodies have the right to require a bond in connection with public work, even though none is authorized to be taken by the statute, and that they have a further right to exceed the requirements of a statute in that regard. If that holding is sound, certainly no possible question exists that the legislature has the power to require a bond in such cases, and of a tenor which is reasonably designed to protect the public. Note 11 L. R. A. N. S. 1028, note 18 A. L. R. 1227, 29 C. J. 611. In Pacific Wood & Coal Co. v. Oswald, 179 Cal. 712, 178 Pac. 854, it was argued, as in Barber Asphalt P. Co. v. Bancroft, 167 Cal. 185, 138 Pac. 742, that the requirement of a bond, similar to that in the case at bar, was unconstitutional because not for a public pur-

pose. The court, however, held to the contrary. In Parker-Washington Co. v. Kansas City, 73 Kan. 722, 85 Pac. 781, the court held that the legislature might authorize a municipality to require a surety company bond in connection with municipal work. In the case of Wilson v. Weber, 92 Hun. 466, 36 N. Y. S. 550, affirmed 157 N. Y. 693, 51 N. E. 1094, a bond was taken by a municipality conditioned for the payment of all claims "for materials furnished in and about such improvement." The bond was given pursuant to sec. 207, c. 120, Laws 1886, and the point raised was, whether the legislature had authority to require such bond which would protect third parties as well as the city. The court, among other things, said:

"So far as the city of Lockport is concerned, there can, of course, be no question as to the right and duty of the law-making department of the state to incorporate into the charter, which is its fundamental law, such provisions as will adequately protect the municipality itself * * * but I think it may go much further than that, and provide a means by which the individual members of the municipality itself, and all other persons, may be protected in their rights. The very "municipal lien law" to which reference has already been made is an instance in point, where to a certain class of men, is furnished an easy and inexpensive remedy for the recovery of their just claims, which was not available to them prior to its enactment, and the means provided by the Lockport charter is simply more direct and easy of attainment. * * * It would seem, therefore, that when it incorporated the provisions of section 207 into the charter of the City of Lockport, the legislature not only did not transcend the limits of its authority, but that it provided an easy, suitable and inexpensive method by which a certain class of creditors could obtain their pay of a party to whom a contract for city improvement had been awarded."

The specific point raised in the case at bar by counsel for the surety company has not, perhaps, been directly raised before, but is substantially disposed of by the case last cited. Further, there are numerous cases, as will be shown hereafter, in which items, such as are sued for in the case at bar, have been held protected under statutes, and bonds in conformity therewith, and no question was raised as to the constitutionality of such statutes or the validity of such bonds. We think that the foregoing contention of counsel for the surety company cannot be sustained.

3. We must, accordingly, determine whether the items disallowed by the court should have been allowed under the provisions of the statute above set forth and under the bond executed in conformity therewith. The case is one of first impression in this state. Many cases like it are apt to arise in the future and we have felt constrained, in order to arrive at a just and proper conclusion, to make a rather exhaustive investigation of the authorities on the subject. We might say, at the outset, that perhaps most of the cases construing mechanic's lien laws have held that materials of the character furnished in the case at bar, or as discussed herein, do not, inasmuch as they do not directly become a component part of a structure or improvement, give rise to a lien under such laws. Notes to 15 L. R. A. N. S. 509, 16 L. R. A. N. S. 585, 31 L. R. A. N. S. 746, 30 L. R. A. N. S. 85, 44 L. R. A. N. S. 311, 42 L. R. A. N. S. 872, 51 L. R. A. N. S. 1040, L. R. A. 1915E 986, 27 Cyc. 45, 46, 47. We should first of all, accordingly, determine as to whether or not the right of recovery, under section 329, supra, is, as claimed by counsel for the surety company, limited to those items which would be lienable under the mechanic's lien laws of the state. It cannot be denied that some of the courts, particularly those of Pennsylvania, Vermont, Wisconsin and Arkansas, have made this limitation. Other cases, on the contrary, have con-

strued such statutes, and the bonds in conformity there-
with, according to their natural meaning, and have al-
lowed recovery for all labor and material coming within
the meaning and contemplation of the statute and the
bond. In this connection we might mention the fact that
the Supreme Court of Washington has held that there is
a difference in the meaning of "supplies" and "materi-
al;" that the latter is such as becomes an actually com-
ponent part of a structure. Mitchell v. Berlin-McNitt Co.,
91 Wash. 582, 158 Pac. 264. But the Supreme Court of
California, upon mature consideration, refused to ac-
knowledge the distinction drawn by the Supreme Court of
Washington. Pacific Wood & Coal Co. v. Oswald, 179
Cal, 712, 178 Pac. 854. And the Supreme Court of Oregon
says that "material," as used in such statutes, includes
both "supplies" and "provisions." Fitzgerald v. Neal,
(Ore.) 231 Pac. 645, 650. Further, the provisions of sec-
tion 329, supra, which states that recovery may be had for
labor and material furnished "in the execution of such
contract," is not materially different from similar provi-
sions in many other statutes. The United States statute
on the subject provides for payment for labor and ma-
terial furnished "for the prosecution of the work." It
was held in Fitzgerald v. Neal, (Ore.) 231 Pac. 645, 650,
that there is no difference in the meaning of the phrase
"for carrying on the work" and the phrase "for the pros-
ecution of the work." In Fidelity & Deposit Co. v. Hege-
wald Co., 144 Ky. 790, 139 S. W. 975, it was held that the
provision for payment of labor and material "used in the
carrying out of said contract," means the same thing as
the phrase employed in the foregoing statute of the Unit-
ed States, and to "carry out," of course, means no more
nor less than to "execute"—the word used in section 329,
supra. Again, it has been held that the phrase "in the
performance" of the work, is substantially equivalent to
the phrase "for the prosecution" of the work. Hilton v.

Construction Co., 202 Mo. App. 67, 216 S. W. 1034; Sherman v. American Surety Co., 178 Cal. 286, 173 Pac. 161. And many courts, in construing statutes containing such or similar phrases, have placed a liberal interpretation thereon, in order to carry the beneficial purpose thereof, namely to provide for the payment of the labor and material, furnished in connection with contracts entered into pursuant to such statutes, into effect.   29 C. J. 611; Brogen v. National Surety Co., 246 U. S. 257, 38 Sup. Ct. 250; United States v. American Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437; City Trust etc. Co. v. United States, 147 Fed. 155, 77 C. C. A. 397; Clatsop Co. v. Fidelity & Deposit Co., 96 Ore. 2, 189 Pac. 207; French v. Nat. Surety Co., 135 Cal. 636, 68 Pac. 92; Sherman v. American Surety Co., 178 Cal. 286, 173 Pac. 161.   Many other cases might be cited.   It was, for instance, said in United States v. American Surety Co., supra, where the question was as to whether a subcontractor was protected by the statute:

"If literally construed, the obligation of the bond might be limited to secure only persons supplying labor or materials directly to the contractor, for which he would be personally liable, but we must not overlook, in construing this obligation, the manifest purpose of the statute to require that material and labor actually contributed to the construction of the public building shall be paid for and to provide a security to that end."

In Sherman v. American Surety Co., supra, it was said:

"It would be inequitable to subject an owner of property to a lien for that which did not enter into and become a part of such property.   Hence, in construing mechanic's lien statutes, they are generally held to cover only what has been incorporated into the substance of, and added to the value of, the property against which the lien is asserted.   *   *   *   In American Surety Co. v. Lawrence-

ville Cement Co., 110 Fed. 717, the court, in construing a
bond given pursuant to the provisions of the section, said:

'The underlying equity of the lien statutes relates to a
direct addition to the substance of the subject matter,
* * * building or other thing to which the lien attaches,
while the statute in question concerns every approximate
relation of the contractor to that which he has contracted
to do. Plainly, the act of Congress and the bond in the
case at bar are susceptible of a more liberal construction
than the lien statutes referred to.' ''

So, too, it was said in City of Portland v. O'Neal, 98
Ore. 162, 192 Pac. 909, and Multnomah County v. U. S. F.
& G. Co., 87 Ore. 198, 170 Pac. 525, L. R. A. 1918C 685,
that the statute requiring a bond, in cases like that at bar,
contemplates every proximate relation of the contractor
to the work which he has contracted to do.

In the case at bar there is nothing to indicate that the
legislature intended by section 329, supra, to limit the
labor and material furnished in connection with a con-
tract to such as would be lienable under the mechanic's
lien statutes. The statute passed in 1909, which was in
part declared unconstitutional in George Bolln Co. v. Ir-
rigation Co., supra, clearly intended the bond therein re-
quired to go beyond the requirements of mechanic's lien
statutes. While we cannot say that that statute indicates
that section 329, W. C. S. 1920, supra, also goes beyond
the requirements of the mechanic's lien laws, particularly
since the reading of the two statutes is dissimilar, yet it
shows that it cannot be said that the legislature had the
limitations of the mechanic's lien laws in mind, when it
enacted section 329, supra. In other words, we are com-
pelled, we think, to construe section 329, supra, in the
light of its own language, bearing in mind the ultimate
and beneficial purpose for which the law was designed.
29 C. J. 611. While the surety company cannot be held

liable beyond the terms of the bond, executed pursuant to the statute, yet it should be held liable for any breach fairly coming within the terms thereof.  29 C. J. 612.

4.   Broadly speaking, and giving a natural meaning to the language used, labor and material furnished "in the execution of a contract" includes, we think, all labor and material which contributes directly or indirectly to the completion of the work.  Machinery, horses and material of every kind, whether owned by the contractor or not, but used for the purpose of completing the contract, contributes thereto.  Yet, as has been stated by some of the courts, there must be some limit to the liability of a surety company.  It would, clearly, be unfair, to hold such company liable for material that is neither proper nor necessary in connection with the work to be performed, and it would seem further that no liability ought to exist for items which cannot be fairly said to have been in contemplation of the parties at the time of the execution of the bond.  Thus it has been held that it is the labor and material supplied for the execution of the work which is protected, and not some obligation incurred by the contractor which does not approximate the construction contracted to be done.  City of Portland v. O'Neal, 98 Ore. 162, 192 Pac. 909.  Material, furnished under contracts like that at bar, falls naturally into certain, definite groups.  Some of these only are involved in the plaintiff's claim herein, but, without reference to that, we shall consider some of the main groups which have come under consideration by the courts, so that we may have a general view of the whole subject.   (a) First, then, courts seem to be agreed that necessary explosives, used in the performance of a contract, must be paid for under statutes and contracts under consideration here, and they have, in fact, generally held that a lien exists for such items even under the mechanic's lien statutes.   Note to 5 Ann. Cas. 446; note to 2 L. R. A. N. S. 588; Johnon v. Starrett, 127 Minn. 138,

149 N. W. 6. On the other hand, courts also are generally agreed that no liability exists for certain other items. (b) Thus a bonding company is held not to be liable for the purchase price of machinery or other material which constitutes a part of the plant or outfit of a contractor, and which is not, from its nature, necessarily wholly consumed in the work, and this is true even though it may be wholly consumed in a particular work. Empire State Surety Co. v. Des Moines, 152 Iowa 531; Beals v. Fidelity etc. Co., 76 App. Div. 526, 78 N. Y. S. 584; Kansas City v. Youmans, 213 Mo. 151, 181; Miller v. American Bonding Co., 133 Minn. 336, 158 N. W. 432; Heltzell etc. Co. v. Fidelity & Deposit Co., (Ark.) 271 S. W. 325; United States Rubber Co. v. Engineering Co., 86 Wash. 180, 149 Pac. 706, L. R. A. 1915F 951; notes to 43 L. R. A. N. S. 165 and L. R. A. 1915F 951; Nye-Schneider-Fowler Co. v. Bridges, 98 Neb. 27, 151 N. W. 942. The reason for this holding, which seems sound, is clearly stated in Beals v. Fidelity & Deposit Co., supra, as follows:

"Its purpose (that of the statute) was to afford protection to those whose labor performed the work under contract and to those who furnished material which entered into and became a part of, or was naturally consumed in or about the completion of, the work in question. That, however, is as far as its provisions go. Its terms are not broad enough under any reasonable construction to cover tools and implements. Unless the liability under the bond was almost unlimited, it would be unfair to those who furnished labor and material legitimately and naturally entering into the construction of a given piece of work, that the liability under the bond should be employed for paying for tools and materials which perhaps might be used upon a hundred contracts. If plaintiff's contention in this case is correct, that the defendant became liable to pay for hand shovels used in and about the work, there is no reason why it would not have been liable if the con-

tractor had seen fit, instead of purchasing a few hand shovels, to secure a steam shovel costing many hundreds of dollars.''

And in Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., supra, where it was contended that all parties becoming creditors of a contractor were protected under a bond like that in the case at bar, the court, in denying such claim, and in speaking of the plant or outfit of a contractor, said:

''If the contractor whose business was to take such contracts from time to time should, while engaged in this particular work, purchase wagons with which to deliver his material, with the expectation of using them similarly in other works for years afterwards, the bill for such wagons might in some sense, perhaps, be said to be in connection with this contract, but surely not within the contemplation of the parties.''

In fact it is said in Kansas City v. Youmans, supra, approved in Standard Boiler Works v. National Surety Co., 71 Wash. 28, 127 Pac. 573, 43 L. R. A. N. S. 162, that a contract presupposes that the contractor will furnish his outfit. We fear, however, that this statement has been disregarded by those courts, which, as hereinafter mentioned, hold that payment of rental for a portion of an outfit is protected under statutes and contracts here considered. (c) Again, courts seem to hold that loans made to a contractor are not, at least in the absence of an assignment of protected claims—a subject which we pass without considering—covered by such statute and cannot be considered to have been within the contemplation of the parties. American S. B. & T. Co. v. National Surety Co., 104 Wash. 663, 177 Pac. 646; New Amsterdam Casualty Co. v. State, (Md.) 128 Atl. 641; People v. Southern Surety Co., (Colo.) 230 Pac. 397; U. S. v. Rundle, 107 Fed.

227, 52 L. R. A. 505; U. S. v. Taylor & Co., 268 Fed. 635; Hardaway & Prowell v. National Surety Co., 150 Fed. 465, affirmed in 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321; Carr Hardware Co. v. Bonding & Surety Co., 190 Ia. 1320, 181 N. W. 680; U. S. F. & G. Co. v. Henderson, (Tex. Civ. App.) 253 S. W. 835; Southern Maryland Bank v. National Surety Co., 126 Md. 290, 94 Atl. 916. The few holdings to the contrary were under contracts and bonds apparently broader than those in the case at bar. Puget Sound State Bank v. Galluei, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767; Title G. & S. Co. v. State, 61 Ind. App. 268; Note 43 L. R. A. N. S. 171. In People v. Southern Surety Co., supra, the court said:

"The surety company entered into this obligation with regard to the ordinary matters which concerned, or were connected with, the performance of the contract. The bond is to secure the performance of the contract, and not the performance of any duties outside the contract, though incidentally connected with it. The borrowing of money to carry out the contract is not a matter which it can be assumed the parties had in contemplation in the execution of the instrument."

(d). The rule as to cost of transportation is not yet as clear as might be wished. It has been held by some courts, which have had occasion to pass upon the point, that a railroad company will not have any claim under such bond, mainly for the reason that it has an independent lien which it may readily assert, and because it cannot be said that payment for such item was in contemplation of the parties when the bond was executed. United States v. Hyatt, 92 Fed. 442, 34 C. C. A. 445; Wisconsin Brick Co. v. Railway Co., 164 Wisc. 585, 160 N. W. 1044, L. R. A. 1915C 912; Union Traction Co. v. C. & S. Co., (Kans.) 213 Pac. 169. See also United States v. Fidelity & D. Co., 86 App. Div. 475, 83 N. Y. Sup. 752. On the other hand, it

is held that necessary cost of transportation for which no lien exists, or in cases where the lien is not usually asserted, or is impracticable to be asserted at time of transportation, may be recovered under such bond. City of Portland v. New England Casualty Co., 78 Ore. 195, 152 Pac. 253; American Surety Co. v. Lawrenceville Cement Co., 110 Fed. 717; Title Guaranty & T. Co. v. Crane Co., 219 U. S. 24, 31 Sup. Ct. 140, 55 L. Ed. 72; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 206. And, doubtless, where the party furnishing materials pays freight and haulage charges, such charges are a proper part of the cost of the material. Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., supra. And such items—if within the contract price—seem to be allowed even in the case of mechanic's liens. 27 Cyc. 44. See also note 43 L. R. A. 170, and note L. R. A. 1915F 953. (e) The cases that have passed on the question of repairs of an outfit are generally agreed that, unless, perhaps, the repairs are small and incidental, so that the expense thereof may be said to be wholly consumed in the performance of the contract, they are items the expense of which is not recoverable under a bond such as that in the case at bar, since the result of the repair may outlast the particular work in question. Alpena v. Title G. Co., 159 Mich. 329, 123 N. W. 1126; Smith v. Oosting, 230 Mich. 1, 203 N. W. 131; U. S. v. Morgan, 111 Fed. 474; Empire State Surety Co. v. City of Des Moines, 152 Iowa 531, 131 N. W. 870, 132 N. W. 837; Standard Boiler Works v. National Surety Co., 71 Wash. 28, 127 Pac. 573, 43 L. R. A. N. S. 162; Pierce Oil Corp. v. Parker, (Ark.) 271 S. W. 24 (incidentally); U. S. Fidelity & G. Co. v. Henderson Co., (Tex. Civ. App.) 253 S. W. 835, 844; National Surety Co. v. U. S., 228 Fed. 577, L. R. A. 1917A 336 (reversed on another point in 246 U. S. 357, 38 Sup. Ct. 250). Incidental repairs have been allowed in American Surety Co. v. Cement Co., 110 Fed. 717; Stryker v. Mercantile Co., (Colo.) 236

Pac. 993; Fidelity & D. Co. v. Hegewald Co., 144 Ky. 790, 139 S. W. 790; Miller v. American Bonding Co., 133 Minn. 336, 158 N. W. 432; French v. Powell, 135 Cal. 636, 68 Pac. 92. See Brogan v. National Surety Co., 246 U. S. 257, 38 Sup. Ct. 250, and U. S. Fid. & G. Co. v. Bartlett, 231 U. S. 337, 34 Sup. Ct. 88, 58 L. Ed. 200. Some of the courts, it seems, would not even hold incidental repairs protected by such bond. (f) Courts differ in their holding on other points. Though the use of a plant, owned absolutely or purchased on credit, (Miller v. American Bonding Co., supra; Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., supra) by a contractor, is not covered by such bond, and though, as heretofore stated, some of the courts have held that the contractor is presumed to own his outfit with which to perform the work, nevertheless a large number of cases have held that rental upon a portion of the outfit used in the work, including machinery and horses, will be protected under such bond. Bricker v. Rollins etc., 178 Cal. 347, 173 Pac. 592; Sherman v. American Surety Co., 178 Cal. 286, 173 Pac. 161; Dawson v. N. W. Construction Co., 163 N. W. 772, 137 Minn. 352; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 Sup. Ct. 614; Miller v. American Bonding Co., 133 Minn. 336, 158 N. W. 432; French v. Powell, 135 Cal. 636, 68 Pac. 92; Multnomah Co. v. U. S. F. & G. Co., 87 Ore. 204, 170 Pac. 525; Hurley-Mason Co. v. American Bonding Co., 79 Wash. 564, 140 Pac. 575; U. S. v. Illinois Surety Co., 226 Fed. 653, 141 C. C. A. 409; Nat. L. & B. Co. v. Title G. & S. Co., 85 Wash. 660, 149 Pac. 16; Multnomah Co. v. U. S. Fid. & G. Co., 92 Ore. 146, 180 Pac. 104; Shannon v. Abrams, 98 Kan. 26, 157 Pac. 449, Ann. Cas. 1918E 502; Livermore & Co. v. G. Co., (Cal. App.) 185 Pac. 413; U. S. v. D. L. Taylor Co., 268 Fed. 635. In other cases, on the contrary, the courts have held that such rental is not protected under such a bond. Troy Public Works Co. v. City of Yonkers, 207 N. Y. 81, 100 N. E. 700, 44 L. R. A. N. S.

311; Southern Surety Co. v. Municipal Exc. Co., 61 Okla. 213, 160 Pac. 617, L. R. A. 1917B 558; U. S. v. Conkling, 135 Fed. 508; State v. National Surety Co., (Md.) 128 Atl. 916; Nebraska Culvert Mfg. Co. v. Freeman, (Iowa) 198 N. W. 7. See also City of Portland v. O'Neal, 98 Ore. 162; 192 Pac. 909. See Livermore & Co. v. C. & G. Co., 43 Cal. App. 549; 185 Pac. 413, holding that claimant must have leased to contractor or subcontractor. The point is of such importance that we do not express an opinion thereon, since it is unnecessary to decide it here.

(g. h. i.)  We now come to the consideration of the largest item included in the bill in the case at bar, namely that of feed for the horses used in the performance of the contract. This feed is akin, at least, to fuel and lubricants furnished for machinery—a point, too, involved in the case at bar—and to board furnished for men. Board and lodging is not ordinarily allowed under mechanics lien statutes. 27 Cyc. 44. And so it has been held in some instances in an action on a bond that it is an item not recoverable under the circumstances disclosed in the particular case. Some of the cases disallow such item, on the theory that it was not within the contemplation of the bond furnished by the bonding company. U. S. v. Kimpland, 93 Fed. 403; Mitchel v. Berlin-McNitt Co., 91 Wash. 582, 158 Pac. 264; Watkins v. U. S. Fid. & G. Co., (Miss.) 103 So. 224; Southern Const. Co. v. Halliburton, (Tenn.) 258 S. W. 409; Oliver Const. Co. v. Erbacher, 150 Ark. 549, 234 S. W. 631; U. S. Fidelity & G. Co. v. Henderson Co. (Tex. Comm. App.) 276 S. W. 203, affirming 253 S. W. 835. On the other hand, it has been held that such item is recoverable, where it is shown that it was necessary for a contractor to maintain a boarding house at his camp, and where the value of the board was deducted from the wages of the men. Bricker v. Rollins etc., (Cal.) 173 Pac. 592; Hess & Skinner Eng. Co. v. Turner, (Tex. Civ. App.) 207 S. W. 171; Clatsop Co. v. Fidelity & D. Co., 96 Ore. 2,

189 Pac. 207; Southern Surety Co. v. Bank, 275 S. W. 436, (Tex. Civ. App.); Brogan v. National Surety Co., 246 U. S. 257, 38 Sup. Ct. 250. There may, of course, be a material difference between boarding men and furnishing feed for horses. A boarding camp may be run purely for profit, and there seems to be no good reason for making a bonding company liable for food furnished in such case, under a bond like that involved here; and unless the cost of the board were deducted from, or constitutes a portion of, the pay of the men, there would be a double liability which would appear not to be naturally contemplated in the execution of a bond. But if, or to the extent, a boarding house, at the camp, is run, not for profit, but as a necessary adjunct to the work, the food being furnished at cost, and the expense thereof deducted from the cost of the labor, so that the cost of the food simply stands for that much labor, no particular difference as to liability is perceivable in such case from the case where feed is furnished for horses, which, ordinarily at least, we apprehend, are fed at the ultimate cost of the contractor. Nor do we see any material difference between furnishing coal for machinery and feed for horses. As was said in the case of Wood, Curtis & Co. v. Lumber Co., 153 Cal. 230, 94 Pac. 877, 16 L. R. A. N. S. 585:

"In the ultimate analysis there is no difference in principle, whether draying is done by horses and wagons or by automobile trucks; whether grading is done by horses and scrapers or by traction engine and steam paddies. One and all are in their essence but tools and machinery."

True, the feed furnished to horses or mules, while furnishing power, at the same time also preserves the lives of these animals, but we think that this should be considered incidental to the main purpose for which, in such case, the feed is furnished.

There is some diversity of opinion among the courts as to whether or not the expense of fuel and other similar material, like lubricants, are lienable items. The majority of courts apparently take a view that they are not. See notes 36 L. R. A. N. S. 866, and L. R. A. 1915E 986. Some courts also take the view that the cost of such material may not be recovered under a bond similar to that in the case at bar. U. S. etc. v. City Trust etc. Co., 21 App. Div. 369; U. S. etc. v. Surety Co., 23 App. Div. 153; Philadelphia v. Malone, 214 Pa. 90; 63 Atl. 539; Elias Lyman Coal Co. v. U. S. G. Co., 82 Vt. 95, 71 Atl. 1106; Nye State Co. v. Bridges, Hoye & Co., 98 Neb. 27, 151 N. W. 942; Schultz v. Quereau Co., 210 N. Y. 257, 104 N. E. 621; Pierce Oil Corp. v. Parker, (Ark.) 271 S. W. 24. The same view was held in the case of Alpena v. Title Guaranty Co., 168 Mich. 350, 134 N. W. 23, but that case was overruled in the case of Smith v. Oosting, 230 Mich. 1, 203 N. W. 131. The two cases cited from the District of Columbia are, we think, not in harmony with the cases decided by the Supreme Court of the United States on similar questions. It is doubtful that the New York case is in point, because the decision is not based on a bond. It holds that such item is not lienable. This leaves, accordingly, the cases from Pennsylvania, Arkansas, Vermont and Nebraska holding that a surety company cannot be held liable for items of this character. To this must be added the holding of the Wisconsin court, under the present statutes in that state. Southern Surety Co. v. Metropolitan S. Commission, (Wisc.) 201 N. W. 980; Southern Surety Co. v. Hotchkiss, (Wisc.) 201 N. W. 986. The Wisconsin cases were decided upon the theory that the statutes of that state clearly indicate that no items may be recovered under a statutory bond similar to that in the case at bar except those which are lienable under the general mechanic's lien laws of the state. Cases contrary to the foregoing authorities are the following: Associated Oil Co., v.

Commary-Peterson Co., 32 Cal. App. 582; Shannon v. Abrams, 98 Kan. 26, 157 Pac. 449, Ann. Cas. 1918E 502; Town of Cornelius v. Lampton, 189 N. C. 714, 128 S. E. 334; Zipp v. Fidelity & D. Co., 73 App. Div. 20, 76 N. Y. S. 386; City Trust etc. Co. v. U. S., 147 Fed. 155; National Surety Co. v. Lumber Co., 67 Wash. 601, 122 Pac. 337; Smith v. Oosting, 230 Mich. 1, 203 N. W. 131; Bartles Scott Oil Co. v. Western Surety Co., (Minn.) 200 N. W. 937; Fay v. Bakers Surety Co., 125 Minn. 211, 146 N. W. 359; Ann. Cas. 1915C 688; Hilton v. Const. Co., 202 Mo. App. 67, 216 S. W. 1034; Pittsburgh Coal Co. v. Asphalt & Const. Co., 138 Tenn. 154, 196 N. W. 490; Southern Const. Co. v. Halliburton, (Tenn.) 258 S. W. 409; Standard Oil Co. v. Marvill, (Ia.) 206 N. W. 37, (under special statute); State v. U. S. Fid. & G. Co., 10 Ohio App. 141. See also Elias Lyman Coal Co. v. U. S. F. & G. Co., 83 Vt. 278, 75 Atl. 280, which cannot, however, be said to be contrary to the holding of the other Vermont cases hereinbefore cited. The reasoning in City Trust etc. Co. v. United States would seem to be persuasive. The court said:

"The labor expended by men in wheeling barrows of material from the point of receipt to the place where it is to be used; in working hand pumps to clear an excavation of water; in turning the cranks of a hoisting derrick, so as to raise materials to a proper elevation—all such labor is so manifestly labor in the prosecution of the work that no one could have the hardihood to contend that it is not within the express terms of the statute. If the contractor, whether for purposes of economy or of expedition, elects to do this work by the power of steam, instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which produces it should not be equally within the protection of the same statute."

We come then directly to the point as to whether or
not the cost of the feed furnished to the horses in the case
at bar may be recovered.  We find that only three cases
directly hold that it cannot be.  Fay v. Bankers Surety
Co., 125 Minn. 211, 146 N. W. 359; Ann. Cas. 1915C 688;
U. S. v. Fidelity & Deposit Co., 169 Ill. App. 1; U. S. v.
Lawrence, 236 Fed. 1006.  The last mentioned case was
overruled, however, in 252 Fed. 122, and the case from
Minnesota appears to be altogether inconsistent with the
general liberal leaning of that court in connection with
other claims under a bond of that kind.  The Illinois case
was decided on the theory that the food was furnished
"for the purpose of maintaining the life of the teams."
But, as we stated before, this was an incidental, but not
the main, purpose at the time of the performance of the
work.  We should mention, however, that, judging from
other cases, the courts of Wisconsin, Vermont, Pennsyl-
vania and Arkansas would doubtless also hold that such
expense can not be recovered under a bond like that at
bar.  By far the greater number of cases actually passing
on the point, have held that such items may be recovered.
Bricker v. Rollins etc., 173 Cal. 347, 173 Pac. 592; Pacific
Wood & Coal Co. v. Oswald, 179 Cal. 712, 178 Pac. 854; Fed-
eral Paving Co. v. Raschka, (Ind. App.) 141 N. E. 644;
Early & Daniel Co. v. American Surety Co., 5 Fed. (2d)
670; U. S. v. Lawrence, 252 Fed. 122, 164 C. C. A. 234; U.
S. Fidelity & G. Co. v. Henderson Co., (Comm. App.) 276
S. W. 203, affirming 253 S. W. 835; City of Portland v.
Casualty Co., 96 Ore. 48, 189 Pac. 211; Carter County v.
Oliver Hill Const. Co., (Tenn.) 228 S. W. 720; National
Surety Co. v. Lumber Co., 67 Wash. 601, 122 Pac. 337;
Stryker v. Mercantile Co., (Colo.) 236 Pac. 993; Clatsop
County v. Feldschau, 99 Ore. 680, 196 Pac. 379; Southern
Surety Co. v. Bank, (Tex. Civ. App.) 275 S. W. 436.  In
the case of U. S. v. Lawrence, supra, it was said that the
test as to whether or not such supplies may be recovered,

is as to whether or not they have a proximate relation to performance of the contract work, the court saying in part:

"Teams brought together for such work are more naturally classified with implements than with workmen, and feed for the teams so employed with fuel for power than with the board of men whom the circumstances of employment leave free to exercise an independent choice. It is said that it would have been necessary to feed the teams whether they were working or not, but that is not the test, as is shown by Brogan v. National Surety Company."

In the case of Federal Paving Co. v. Raschka, supra, the court said simply:

"It is apparent that such feed was material furnished for the purpose of carrying forward, performing and completing the contract, and that as such it is clearly covered by the conditions of the bond."

In National Surety Co. v. Lumber Co., supra, the court said:

"Such things do not enter into and become a physical part of the finished structure as materials do, as that word is generally construed, but they do become as much a part of the structure as the labor which is performed upon it. It seems quite clear to us that coal, horse feed and work performed by the teams all come within the terms of the prescribed statutory provisions of the bond, which becomes the measure of the rights of the several claimants."

In U. S. Fidelity & Guaranty Co. v. Henderson Co., supra, the court, in upholding a claim of this character, said:

"It is a principle of universal application that statutes, such as the one governing bonds like this, are to receive a liberal interpretation. Furthermore, the wording of the contract, secured by the bond, towit—"materials that are required to complete the work indicated," is broader than the rule contended for by plaintiff in error, that the right to recover for materials furnished is limited to those materials that actually enter into the construction. Rather it is broad enough to cover all materials that are required to complete the work—that is helpful, needful and the like."

We think that the rule last mentioned is the rule in keeping with the intent of the statute, of the contract and of the bond. Coal or gasoline that generates power is transformed into labor, and should be within the spirit of the statute just as much so as labor performed by hand. That is true also in case feed is furnished to horses. The work performed by the machinery, for which the coal was used, and by the horses in this case, might have been performed by the hands of men. But that was not deemed feasible and would have been too expensive. Yet, if that had been done, there would have been no question that the expense thereof would have been covered by the bond herein given. And it seems to us that where the labor is done by more efficient means, it would be a narrow construction of the statute and of the bond to say that the material furnished in order to put this efficiency into operation, is not material contemplated by the statute or the bond. All this material was clearly furnished in the execution of the contract. It was not furnished for any other purpose. It was necessary and proper and materially aided in doing the work, and was, we think, clearly contemplated when the bond was executed. We think, in short, that where labor or material furnished is necessary or even proper, for the execution of any particular work, under a contract like that in the case at bar, and the fur-

nishing of such labor and material may be fairly held to have been in contemplation of the parties when executing the contract and the bond therefor, and the same is of a nature so as to be necessarily wholly consumed in the particular work, then it is protected under a contract and bond like those in the case at bar. We can find no justification for reading into the statute that material furnished must be bodily incorporated in and made an integral, component part of the finished structure, before the payment therefor is protected under a bond given in pursuance of such statute. To do so would, we think, be wholly unwarranted by the language used, and would do violence to it. Particularly is this conclusion true if we place, as we should, a fairly liberal construction upon the statute, though we think that the natural, ordinary meaning of the language used leads to the same result. It may be thought that this holding will lead to great difficulties, particularly in connection with subcontractors. But we do not think so. A contractor need not pay his subcontractor, or a subcontractor a contractor under him, until the items for the payment of which he is responsible, are paid, and further, as was said in United States v. American Surety Co., supra:

"It is easy for the contractor to see to it that he and his surety are secured against loss by requiring those with whom he deals to give security by bond, or otherwise, for the payment of such persons as furnish work or labor to go into the structure."

And a like principle would obtain in case of subcontractors in turn dealing with contractors under them. And a further safeguard is provided by section 332, W. C. S. 1920, which requires a notice to be given to the contractor and his sureties of the amount and nature of a claim within ninety days after furnishing the last item of material or performing the last item of work.

We think it follows from what we have said that the item of overshoes, included in plaintiff's bill, cannot be allowed, because the payment thereof was not in contemplation of the parties when the bond was executed and because such material was not necessarily wholly consumed in the performance of the contract, but might long survive it.  We are unable to determine as to whether liability exists for the item included in the bill under the general term "supplies," since the record fails to show its use or purpose.  We think the item for coal oil should be allowed, if found to have been necessarily used in the contractor's camp for the purpose of supplying light, or for some other purpose in connection with, and aiding in, the performance of the contract herein, and that the items for haulage and feed for the horses, as well as the coal, should also be allowed.  The judgment of the court below is accordingly reversed, and the cause remanded for a new trial.  It is so ordered.

*Reversed and remanded.*

Potter, C. J., and Kimball, J., concur.