D & L BUILDING, INC., a Wyoming corporation, and the Travelers Indemnity Company, a Connecticut corporation, Appellants (Defendants),

Welles Products Corporation, an Illinois corporation, (Defendant),

v.

The STATE of Wyoming for the Use and Benefit of MALTBY TANK & BARGE, INC., a Washington corporation, Appellee (Plaintiff).

No. 87-149.

Supreme Court of Wyoming.

Dec. 22, 1987.

J. Stan Wolfe of Banks, Johnson, Wolfe, Hallock & Michaels, Gillette, for appellants.

John R. Vincent and Kristin H. James of Hettinger, Leedy & Vincent, Riverton, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

BROWN, Chief Justice.

This is an appeal of a district court order granting summary judgment in favor of appellee, Maltby Tank & Barge, Inc. (Maltby) to recover on a contractor's bond for a public construction project. Appellants, D & L Building, Inc. (D & L) and The Travelers Indemnity Company (Travelers) urge the following issues:

"A. Is a second tier materialman within the coverage of a statutory payment bond required for public works projects in Wyoming?

"B. Does a second tier materialman have an action against a prime contractor

for the price of equipment sold to a materialman in privity with the prime for use on a public works project in Wyoming? "C. A second tier materialman has no claim against a prime contractor with whom there is no privity of contract under Sections 16-6-112 through 16-6-117 of the Wyoming Statutes 1977 and their amendments."

D & L was the general contractor for the construction of a wastewater treatment facility for the City of Riverton, Wyoming. When D & L became the general contractor it obtained a contractor's bond for the project pursuant to § 16-6-112, W.S.1977 (October 1982 Replacement). Travelers was surety on that bond.

To facilitate the construction, D & L subcontracted with Welles Products Corporation (Welles) for clarifier equipment necessary to completion of the facility. Welles then ordered the equipment from Maltby, and Maltby manufactured the clarifier equipment and shipped it directly to the construction site. Delivery occurred on September 25, 1985. D & L began installing the clarifier equipment on October 16, 1985, and completed installation on August 1, 1986. D & L submitted a request to the City of Riverton for payment on the clarifier equipment in September, 1986, and the project engineer recommended payment in October, 1986. D & L accepted final project payment in late October, 1986.

Maltby billed Welles on October 7, 1985, but did not receive payment. After demanding payment, Maltby filed a complaint in the district court on July 9, 1986, naming D & L, Welles and Travelers as defendants. Maltby sought judgment against the defendants in the amount of $30,734, plus interest and costs on the unpaid invoices for the clarifier equipment. D & L and Travelers answered, and D & L cross-claimed against Welles. After an initial wave of discovery, Maltby moved for summary judgment. On April 14, 1987, a hearing was conducted on the motion, and the trial court granted Maltby summary judgment. Following oral motion the trial court dismissed Maltby's claims against Welles without prejudice. By then Welles had filed for protection under the United States Bankruptcy Code. This appeal is from the summary judgment order.

The three issues raised on this appeal really embody three alternative legal theories in support of the same argument. Appellants urge this court to construe § 16-6-112 narrowly so that the protection of a contractor's bond on a state public works project only benefits parties in direct contractual privity with the general contractor for the project. We decline this invitation and rely instead on the plain language of the statute.

Section 16-6-112 provides in pertinent part:

"Whenever any contract is entered into with the state, or any county, city, town, school district, high school district or any public board, department, commission or institution, or other public corporation of this state, for the erection, construction, alteration or repair of or addition to any public building, or other public structure, or for making any addition thereto, or for any public work or improvement and the contract price exceeds five thousand dollars ($5,000.00), the contractors shall be required before beginning work under the contract to execute a bond to the state, county, city, town, school district, high school district, or any public board, department, commission or institution with which the contract is made. The bond shall be conditioned for the payment of all taxes, excises, licenses, assessments, contributions, penalties and interest thereon when, and if, lawfully due the state or any political subdivisions or instrumentalities. *The board [bond] shall also be for the use and benefit of all persons who may perform any work or labor or furnish any material or goods of any kind which were totally or partially used or expended in the execution of the contract,* conditioned for the performance and completion of the contract according to the terms thereof, compliance with all the requirements of law and payment as due of all just claims for work or labor performed and material furnished and taxes, excises, licenses,

assessments, contributions, penalties and interest accrued in the execution of the contract. * * *" (Emphasis added)[1]

When interpreting statutes we begin by looking to the words of the statute, giving them their plain and ordinary meaning in an attempt to determine legislative intent. *Paravecchio v. Memorial Hospital of Laramie County*, Wyo., 742 P.2d 1276, 1278 (1987). This court last addressed the plain and ordinary meaning of § 16–6–112, in *Franzen v. Southern Surety Company*, 35 Wyo. 15, 246 P. 30 (1926).[2] With Justice Blume writing for the court, the public contract bond statute was held to include labor and materials contributing "directly or indirectly" to completion of the project. *Id.* at 27, 246 P. 30. In reaching this conclusion, the court stated it was interpreting the statute "in the light of its own language." *Id.* at 26, 246 P. 30.

█ We now hold that § 16–6–112, again interpreted in the light of its own language, plainly evidences legislative intent

that the benefit of a contractor's bond on a public works project is not limited to those in privity of contract with a subcontractor or the general contractor.

We are not persuaded by appellants' arguments that § 16–6–112 should receive a narrower construction based on an analogy to federal statutes, or by applying definitions of terms set out in § 29–1–201, W.S. 1977 (June 1981 Replacement). Had the legislature intended to limit the class of persons who benefit under a § 16–6–112 contractor's bond the way federal statutes do, they could have adopted the express language of the federal statutes.[3] Likewise, had the legislature intended to apply the definitions of "contractors," "subcontractors" or "materialmen" set out in § 29–1–201 of the Wyoming lien statutes, it could have included such definitions in the contractor's bond statutes. The bottom line, however, is that the legislature passed § 16–6–112 with express language benefiting materialmen such as Maltby.

1. Section 16–6–112 was amended subsequent to this case effective May 22, 1987.

2. Franzen addressed § 329 W.C.S.1920, the predecessor of § 16–6–112. Section 329 provided in pertinent part:

"Whenever any contract shall be entered into with the state, or any county, city, town, school district, high school district, or other public corporation of this state, for the erection, construction, alteration or repair, of (or addition to) any public building, or other public structure, or for making any addition thereto, or for any public work or improvement and the contract price exceeds the sum of five hundred dollars, the contractors shall be required before beginning work under said contract *to execute a bond to the state, county, city, town, school district, high school district or other public corporation with which the contract is made, for the use of the same, and also for the use and benefit of all persons who may perform any work or labor or furnish any material in the execution of such contract,* conditioned for the performance and completion of such contract according to the terms thereof, and to comply with all the requirements of law, and to pay as they become due all just claims for all work or labor performed and material furnished in the execution of such contract. * * *"

3. The federal statutes creating a bond requirement for contractors on a federal works project are codified at 40 U.S.C. §§ 270a–270f (1982), and are popularly referred to as the Miller Act.

The Miller Act was first adopted in 1935. Section 16–6–112 has been amended six times since 1931.

In defining the rights of persons furnishing labor or materials to the benefit of a contractor's bond the Miller Act expressly provides in pertinent part:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a and 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however, that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made * * *."* (Emphasis added.) 40 U.S.C. § 270b(a) (1982).

Appellants also briefly argue that the language of § 16–6–117, W.S.1977 (October 1982 Replacement), concerning claims made against final payment by the relevant public subdivision to the general contractor, somehow evidences legislative intent to limit the express language of § 16–6–112. This case does not involve a claim against final payment by the City of Riverton to D & L. That payment was made long ago. This case involves Maltby's claim on the § 16–6–112 contractor's bond. We will not look to the language of § 16–6–117 to construe § 16–6–112 when the latter is unambiguous. Maltby's action is on the bond and the plain language of § 16–6–112 controls the result.

Affirmed.